**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**ROY BURNETT**                                                                        **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO: 2:10cv267KS-MTP**

**PEARL RIVER BASIN NARCOTICS TASK FORCE;
SHERIFF BERKLEY HALL, INDIVIDUALLY AND AS
SHERIFF OF MARION COUNTY, MS; SO5; SO14; SO502; SO503;
SO504 (all of whom names are unknown) JAMIE SINGLEY,
INDIVIDUALLY AND AS EMPLOYEE OF PEARL RIVER BASIN
NARCOTICS TASK FORCE, and JOHN DOES A THROUGH Z**          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment **[#19]** filed on behalf of defendants Sheriff Berkley Hall, Adrian Fortenberry, Brad McDermit, Jamie Singley and Steven Palmer.  The court, having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted.  The court finds specifically as follows:

The plaintiff's claims arise out of his June 19, 2007, arrest, and incarceration in Marion County, Mississippi.  Burnett has alleged violations of his rights protected by the United States Constitution and the Mississippi Constitution.  His federal claims are brought under 42 U.S.C. § 1983, however, the Complaint makes no allegations regarding the Mississippi Tort Claims Act ("MTCA"), § 11-46-1 et seq.  Further, Burnett did not file a notice of claim under the MTCA as required by § 11-46-11.

More specifically, Burnett's claims stem from his arrest by Marion County

Sheriff's Deputies and members of the Pearl River Basin Narcotics Task Force and his subsequent incarceration for approximately seventeen months in the Marion County Detention Center without ever being indicted.

In June 2007, the Pearl River Basin Narcotics Task Force ("Task Force") assisted the City of Columbia Police Department with a burglary investigation. That burglary investigation led to multiple felony drug investigations. More specifically, an individual arrested in connection with the burglary offered to provide information on drug dealers and to set up "drug buys" in exchange for the Task Force dropping charges against him. Task Force Agents began using him as a confidential informant (hereinafter, the "CI" 1) to assist in local drug interdiction. In particular, agents asked the CI to set up purchases for them and he began doing so. The CI set a number of buys prior to setting up the one that involved Burnett and, as such, he was a proven source of information at the time in which he dealt with the Burnett.

On the evening of June 18, 2007 the CI set up a buy of crystal methamphetamine from Amanda McDonald (Burnett"s girlfriend) and Burnett. The buy was set up by cell phone, in the presence of Deputy Jamie Singley and Deputy Brad McDermit while standing in the Marion County Sheriff's Department Conference room. The CI completed setting the deal up with McDonald by learning that she and Burnett would be delivering the drugs in a blue and gray extended cab Chevy S-10 Pickup and establishing a rendezvous point.

After the CI hung up the phone with McDonald, Deputy Singley called Marion County Sheriff's Deputy Adrian Fortenberry, who was working his normal 6 p.m. to 6 a.m. shift for the Marion County Sheriff's Department, and informed him of the buy.

Singley gave Fortenberry a description of the vehicle Burnett and his companions would be traveling in and asked that Fortenberry station himself just outside of the City of Columbia on Hwy 98 and monitor Hwy 98 for the drug delivery.  Singley asked Fortenberry to try and protect the identity of his CI by seeing if there was a basis for a traffic stop on the drug transport vehicle first and, only if there was not, to stop the suspects based upon the probable cause provided by the CI.

Burnett, McDonald and Boykin, all of whom were in Hattiesburg at Burnett's home when the CI set up the drug deal, got in McDonald's blue Chevy S-10 extended cab pick-up truck and began making their way towards Columbia.  Burnett was driving and notably, by his own admission, the brake lights on the pick-up truck did not work properly.

As Burnett and his companions neared the City of Columbia, Burnett saw a Marion County Sheriff's Deputy stationed at the intersection of Armstrong Road and Highway 98.  That Deputy was, of course, Deputy Adrian Fortenberry.  Burnett, who admits he was speeding, "dropped down to the speed limit" when he passed Deputy Fortenberry.  Fortenberry watched the blue Chevy S-10 go past him at a "high rate of speed," and jam on its brakes to decelerate "because it came up on another vehicle…"  Because, the vehicle's brake lights were not functioning properly, they did not illuminate when Burnett applied the brakes.  Fortenberry immediately pulled out on to Hwy 98 behind Burnett's vehicle and verified that the vehicle was traveling over the speed limit.  Deputy Fortenberry then radioed dispatch that he was initiating a stop on the vehicle, activated his blue lights and pulled Burnett over.

Officers Singley and McDermit, who were set up nearby on Hwy 98, overheard

-3-

Fortenberry's radio dispatch that he was initiating a stop and, assuming the vehicle Forternberry was stopping was the drug transport vehicle, began making their way to the area of the stop.

Once Burnett was stopped on the side of Hwy 98, Fortenberry approached the driver's side of the vehicle and informed him of the reason he stopped him.  Next, Fortenberry asked the driver for his driver's license and proof of insurance.  Moments later, agents from the Task Force arrived on the scene.  Upon arriving on the scene, Deputy Singley verified that the vehicle matched the description the CI was given and further verified that the occupants identification matched that of the individuals the CI was told would be delivering the drugs—Amanda McDonald and Roy "Robo" Burnett. After so verifying, the Task Force took over the stop from Fortenberry.

Deputy Singley immediately asked Burnett for permission to search the truck, to which he responded in the affirmative.  Burnett did, however, state that the vehicle was McDonald's, not his, and, as such, he really did not have the authority to consent to the search.  As a result, Singley asked McDonald for consent to search and she gave verbal consent.

Deputy Singley searched the vehicle from front to back and in the "extended part [of the truck] found a bottle with some ice form substance in it which appeared to be crystal meth."  Singley later "field tested" the substance and it was, in fact, crystal methamphetamine.  Subsequent tests by the Mississippi Crime Lab further verified the substance was crystal methamphetamine.  Deputy Singley then placed Burnett, McDonald and Boykin under arrest and had them transported to the Marion County Jail ("MCJ") where, at approximately 2:34 am on June 19, 2007, Burnett was booked in.

-4-

That same night, soon after Burnett's arrest, Deputy Singley called Marion County Justice Court Judge Gwen Broom in order to establish probable cause to detain Burnett and have bond set.  Singley spoke with Judge Broom over the telephone and provided her with an oral recitation of the probable cause he had to arrest and hold Burnett.  Upon hearing the evidence, Judge Broom determined there was probable cause to arrest and detain Burnett and set his bond at $35,000.00.

The following day, June 20, 2007, Singley executed an affidavit in the Marion County Justice Court in front of Justice Court Judge Sharon Whitfield charging Burnett with possession of a controlled substance in violation of Section 41-29-139(c) of the Mississippi Code.  Having reviewed the warrant and heard evidence of probable cause from Deputy Singley, Judge Whitfield issued a warrant for Burnett's arrest based on the violation of Section 41-29-139(c).  The warrant was personally served on Burnett at the MCJ by Deputy Singley.

On July 2, 2007, Burnett voluntarily gave a statement regarding his involvement in the transportation of the crystal methamphetamine to Columbia.  In his statement, Burnett admits to receiving text message about delivering some crystal methamphetamine to Columbia and being stopped while attempting to do so.  Further, Burnett admitted at his deposition that the entire statement was true and correct except that the text message setting up the buy came on someone else's cell phone, not his.

On July 26, 2007, Burnett appeared before Justice Court Judge Broom for his "initial appearance."  At that same time, he was given a court appointed attorney—Shirley Baldwin.  Burnett waived his preliminary hearing at that time as well. Burnett remained incarcerated in the MCJ awaiting prosecution until he filed a Habeas

Corpus Petition.  Following the filing of that petition, Circuit Court Judge Prichard granted the same and ordered him released because he had not yet been indicted on the charge for which he was being held.  On October 10, 2008, Burnett was released from the custody of the MCJ into the custody of the Petal Police Department who had a "hold" on him for an unrelated crime.

On June 21, 2010, Burnett filed suit alleging the moving defendants denied him due process and equal protection under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution by illegally seizing his person and property.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.

-6-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating

-7-

[entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## LAW AND ANALYSIS

Burnett first contends that Sheriff Hall, Adrian Fortenberry, Brad McDermit,

Jamie Singley and Steven Palmer violated his constitutional rights by "illegally seizing his person when he was arrested after being stopped on Hwy 98."  The moving defendants contend that Burnett has failed to demonstrate a constitutional violation and, thus, this claim fails.

**Illegal Seizure**

It is well settled that "individual liability under Section 1983 may not be predicated on the doctrine of respondeat superior," and that "[o]nly the direct acts or omissions of government officials … will give rise to individual liability under Section 1983." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) (citing, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994)).  Simply put, in order to demonstrate liability against any of the moving defendants, Burnett must provide competent evidence that the individual personally engaged in an activity that led to the alleged constitutional deprivations.  In this case, it is unclear as to whether Burnett is claiming his initial stop was unconstitutional, his arrest was unconstitutional, or both.  The court will assume he is alleging both the initial stop and actual arrest were unconstitutional and address both accordingly.

As for any assertion that Burnett's initial stop was unconstitutional, the defendants argue that the stop was made by Deputy Fortenberry based solely upon Burnett's traffic violation.  However, Sheriff Hall nor Deputies McDermit, Singley or Palmer were involved in that initial traffic stop, and did not directly participate in the alleged unconstitutional stop.  Thus, because Hall, McDermit, Singley and Palmer had no personal involvement in the initial traffic stop, they cannot be held liable for any illegality in connection with the same.

-9-

While Burnett apparently concedes Sheriff Hall had no role in the decision to stop him, he continues to assert that McDermit, Singley and Palmer personally participated in that decision.  Burnett bases this argument on his unsupported allegation that the reason for the initial stop on Hwy 98 was "based solely upon information from a confidential information (sic) whose reliability was not established at the time of the stop...."  Burnett's allegations simply are not borne out by the record evidence in this matter.

Although Singley and McDermit provided Fortenberry with a description of Burnett's vehicle based upon information given by the CI, Fortenberry gave uncontradicted testimony that his stop was based on the misdemeanor traffic offenses which he personally witnessed Burnett committing.  In fact, Fortenberry testified that he was unable to initially identify the vehicle and match it against the description given by the CI as it passed him because it was dark.  Because Fortenberry's decision to stop Burnett was based upon the traffic offenses — which Burnett admitted to committing — Hall, Singley, McDermit and Palmer had no personal participation in the initial stop of Burnett  and, therefore, have no liability for any alleged violation as a result of the same.

As for Burnett's arrest after being stopped on Hwy 98, Deputy Singley was the officer who made the determination that Burnett should be arrested and actually made the arrest.  Burnett has provided no evidence to the contrary.  Fortenberry, McDermit and Palmer were present when Burnett was arrested, however, they did not make the decision to do so; rather, Singley was the arresting officer.  Thus, neither Fortenbery, McDermit, nor Palmer may be held liable for an alleged unlawful arrest.  Similarly, it is

-10-

uncontested that Sheriff Hall was not present and had no role in arresting Burnett. Thus, Sheriff Hall cannot be held liable for the alleged unlawful arrest of Burnett.

Even were the above not true, the moving defendants in this suit are entitled to qualified immunity.  Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity."  *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001).  A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right."  *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In assessing a claim of qualified immunity, courts should apply a two part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. 194 (2001); *see also, Pearson v. Callahan,* United States Supreme Court, No. 07-751 ("order of battle" delineated in Saucier is no longer mandatory).  However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established."  *Saucier*, 533 U.S. at 201.  It is vital to note that the right that the "official is alleged to have violated must have been "clearly established. in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that

a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The "relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*,

533 U.S. at 202.  Finally, it is worth noting that "[w]hen a defendant invokes qualified

immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the

defense." *McClendon v. City of Columbia*, 307 F.3d 314, 323 (5th Cir. 2002).

While the Constitution does not guarantee that only the guilty will be arrested,

the Fourth Amendment does prohibit unreasonable searches and seizures.  *See, Baker*

*v. McCollan*, 443 U.S. 137, 145 (1979); *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir.

1998).  Generally, a seizure without probable cause or warrant is a violation of the

Fourth Amendment.  *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000).

Thus, whether an arrest is legal hinges on the existence of probable cause.

Probable cause exists when the totality of facts and circumstances within a

police officer's knowledge at the moment of arrest are sufficient for a reasonable person

to conclude that the suspect had committed or was committing an offense.  *United*

*States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).  If an officer has probable cause to

believe that an individual has committed even a very minor criminal offense in his

presence, he may, without violating the Fourth Amendment, arrest the offender.

*Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also, Lockett v. New*

*Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (arrest for exceeding speed limit).  The

court finds that in this case, contrary to the protestations of Burnett to the contrary,

there can be no doubt that the moving defendants had probable cause to stop and

arrest Burnett.

First, Deputy Fortenberry clearly had probable cause to stop and arrest Burnett based upon his traffic violations. Burnett admitted in his deposition testimony that he was exceeding the posted speed limit and that the brake lights on the truck he was driving were not working properly. Deputy Fortenberry personally witnessed Burnett speeding and driving a vehicle with improper equipment (the brake lights were not illuminating properly) immediately before he pulled him over.

Both speeding and the failure to have proper equipment on a motor vehicle are misdemeanors in the State of Mississippi. *See*, Miss. Code Ann. § 63-3-201; 63-3-501; 63-3-511; 63-7-27. Thus, Fortenberry had probable cause to not only stop, but according to United States Supreme Court precedent, to arrest Burnett for the traffic violations committed in his presence. *See, Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) (warrantless arrests for misdemeanor violations committed in the presence of the officer do not violate the Fourth Amendment). Burnett has not demonstrated a Fourth Amendment violation in connection with his being stopped on Hwy 98 by Fortenberry.

The defendants also clearly had probable cause to arrest Burnett based upon the information provided by the CI. Burnett attempts to negate the probable cause simply by attacking the reliability of the CI. In particular, Burnett contends that the CI's reliability was "not established at the time of the stop since the Defendants had only used" the CI for "two (2) days and there had been no convictions…." Burnett's argument is meritless.

In determining whether officers had sufficient probable cause to make an arrest,

the court is required to look at the totality of the facts and circumstances within the officer's knowledge at the moment of the arrest.  *See, United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).  Here, Deputies Singley and McDermit both provided uncontradicted testimony that the CI was reliable inasmuch as they had used the CI successfully prior to using his information to arrest Burnett.  In particular, Deputy McDermit testified they "had made several successful cases that day and earlier the day before with the CI."  McDermit Depo., p. 23.  Similarly, Deputy Singley testified that Burnett's case was not the first case this CI had worked but, rather, was towards the middle of the sixteen (16) felony cases that they "made off him."  Singley Depo., p. 17.  Singley explained that the CI had been utilized on small cases first in order for officers to make certain he was "credible" and worth "trusting," and then was used on bigger cases.  *Id.* at p. 32.  Significantly, Singley testified that the CI.s information resulted in a number of guilty pleas.  *Id.* at p. 33, 50.

In addition, Singley and McDermit both personally witnessed the CI text and call Burnett and McDonald setting up the buy, knew that Burnett and McDonald would be delivering the drugs and obtained a description of the vehicle the drugs would be transported in.  Within moments after Fortenberry stopped Burnett, Singley arrived on the scene and matched the vehicle with the description given to the CI as well as the identity of McDonald and Burnett with the identity of those the CI was told would be bringing the drugs.  Singley also sought and received consent to search the vehicle and in that search discovered crystal methamphetamine—the drug the CI had set up for delivery.  The totality of the facts known to Singley at the time were clearly sufficient to give him probable cause to arrest Burnett.

-14-

Even had Burnett provided record evidence that demonstrated a constitutional violation resulted from his being stopped and arrested, the officers would still have qualified immunity as their conduct was objectively reasonable under the circumstances.  In suits alleging illegal arrest, the qualified immunity determination turns on whether "a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed."  *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).  Law enforcement officials "who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity."  *Id.* (citing, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

The Supreme Court has explained that qualified immunity ".gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Simply put, if officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized.  *Gibson* 44 F.3d at 277.  Clearly, the defendants had probable cause to stop and arrest Burnett.  Nevertheless, any question as to the sufficiency of probable cause in this case undoubtedly still falls within the protection of the qualified immunity defense as any "mistake" in this case was not "plainly incompetent" or a knowing violation of the law.  *See, Malley*, 475 U.S. at 341.

**Equal Protection**

To demonstrate an equal protection claim, a plaintiff must provide evidence that a state actor intentionally discriminated against him because of membership in a protected class or that he has been intentionally treated differently from others similarly

-15-

situated and there is no rational basis for the disparate treatment.  *See, Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Burnett's Response argues that his Equal Protection violation stems from the allegation that the "plaintiff was not afforded an initial appearance until July 26, 2007, some five (5) weeks after his arrest" in violation of Rule 6.04 of Mississippi's U.R.C.C.C. and Rule 3.02 of the U.J.C.R. Resp., p. 4-6.  Burnett complains that the probable cause hearing provided on the night of his arrest by Judge Broom was insufficient and in violation of the confrontation clause of the Sixth Amendment.  These allegations invoke the Fourth Amendment not the Fourteenth Amendment.  Nevertheless, it is clear that Burnett's Equal Protection claim fails.

First, Burnett is not a member of a protected class—he is a white male.  Next, Burnett has unquestionably failed to demonstrate the he was intentionally treated differently than others similarly situated.  In fact, he has not offered any evidence of any other arrestee "similarly situated" to him, much less that he was intentionally treated differently than such arrestees.  The complete absence of record evidence to support an Equal Protection Claim alone requires this court to dismiss it.

Further, Burnett's argument that he suffered an Equal Protection violation by allegedly not being given an "initial appearance" within 48 hours of being taken into custody does not sound under the Equal Protection clause.  To the contrary, a claim that one's constitutional rights have been violated because of the absence of a prompt post-detention probable cause hearing invokes the Fourth Amendment.  *See, Reynolds v. New Orleans City*, 272 Fed. Appx. 221, 337 (5th Cir. 2008).  Regardless, even

-16-

analyzing the claim under the appropriate amendment reveals that the claim must fail.

First, a violation of U.R.C.C.C. 6.03 or U.J.C.R. 3.02 does not equate to a Fourth Amendment violation. *See, Lawrence v. State*, 869 So.2d 353, 355-56 (Miss. 2003) (holding violation of Rule 6.03 does not necessarily equal to a Fourth Amendment violation); *Harris v. Payne*, 254 Fed. Appx. 410, 418 (5th Cir. 2007) (citing *Lawrence* and noting violation of Rule 6.03 does not equate to Fourth Amendment violation); *see also, Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005) (mere violation of a state law or regulation does not amount to a constitutional violation).

While any significant pre-trial restraint of liberty requires a reliable probable cause determination, the United States Constitution has not been interpreted to require a defendant be "arraigned or make an initial appearance within forty-eight hours of arrest." *See, Jones v. Lowndes County, Mississippi*, 2010 U.S. Dist. LEXIS 119235 *13-14 (N.D. Miss.); *see Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975); *Powell v. Nevada*, 511 U.S. 79, 80 (1994). Rather, all that is required is that those detained pursuant to a warrantless arrest receive a prompt determination of probable cause. *Jones*, 2010 U.S. Dist. LEXIS at * 13. Significantly, an adversary hearing is not required. *See, Baker v. McCollan*, 443 U.S. 137, 142 (1979).

In this case, Burnett received two probable cause hearings within the forty-eight hours of his being arrested. First, within hours of his being arrested, Deputy Singley spoke to Judge Broom over the phone and provided his probable cause to arrest and detain Burnett in order to set bail. Judge Broom found Singley had probable cause to arrest and detain Burnett and, set bail accordingly. The following day, Singley signed an affidavit in front of Judge Whitfileld and provided an oral recitation of the grounds for

the arrest and detention of Burnett.  Judge Whitfield found that Singley had probable cause to arrest and detain Burnett and, as such, issued a warrant for Burnett's arrest. While Burnett may not believe the two probable cause determinations were sufficient to meet Mississippi's standard as specified under U.R.C.C.C. 6.03 or U.J.C.R. 3.02, they were certainly sufficient under the United States Constitution.

**Due Process**

From his response to this motion, Burnett apparently now concedes that he was not illegally incarcerated/falsely imprisoned as he fails to even address the claim. Instead, Burnett's Due Process[1] claim now focuses on his continued incarceration in the Marion County Jail without his case being presented to the District Attorney. Burnett, however, does not explain how his continued incarceration based upon valid legal process amounts to a Due Process violation.  In fact, it is unclear whether Burnett is alleging a substantive or procedural due process claim.  Such lack of specificity is of no consequence as neither claim can be demonstrated here.

To state a claim for a due process violation, a Plaintiff must establish a "recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that he was intentionally or recklessly deprived of that interest, even temporarily, under color of state law.'" *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990).  The procedural component of the Due Process Clause makes certain that citizens receive fair process, i.e. notice and an opportunity to respond, when deprived of a protected liberty interest.  *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th

---

[1]   Burnett continues to cite the Fifth Amendment as a basis for his Due Process claim; however, the Fifth Amendment "applies only to actions of the federal government…" *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

Cir. 2003).  The substantive due process "bars certain arbitrary, wrongful government actions „regardless of the fairness of the procedures used to implement them.."  *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 (5th Cir.. 2007) (quoting, *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Substantive due process is violated by state conduct that "shocks the conscience."  *McClendon v. City of Columbia*, 305 F.3d at 326.  It is well settled that regardless of the "theory of liability that a plaintiff is pursuing," to state a viable substantive due process claim a "plaintiff must demonstrate that the state official acted with culpability beyond mere negligence."  *Id.* at p. 325.

As for any procedural due process claim, Burnett has failed to assert what additional process he was due.  He was given two probable cause hearings and an initial appearance. He was appointed an attorney and waived his preliminary hearing. Burnett was given the process necessary to detain him.

Further, any procedural due process claim is barred by the *Parratt/Hudson* doctrine.  That doctrine stands for the proposition that

> no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct.

*Al-Ra'Id v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995).  Burnett's claim for a procedural due proves violation based upon his continued incarceration clearly falls within the *Parratt/Hudson* doctrine.  As McDermit explained at his deposition, the case "fell through the cracks" and "was forgotten about for a little while."  McDermit Depo., p. 18. Singley, who was originally working the file, left employment with Marion County at the end of October, 2007 and believed the file was going to be handled by McDermit.

-19-

Singley Depo., p. 23.  McDermit believed that Singley had taken the file with him.
McDermit Depo., p. 15-16.  This mis-communication clearly falls within the parameters
of *Parratt*.  At worst, the mishandling of the case was a negligent episodic act.
Furthermore, the fact that a Petition for Writ of Habeas Corpus as well as state law
claims for false arrest or imprisonment could be utilized by Burnett demonstrate the
existence of adequate post-deprivation remedies.  *See, Al-Ra'Id*, 69 F.3d at 32 (stating
Habeas Corpus and state law remedies for illegal detention were sufficient
post-deprivation remedies for purposes of *Parratt/Hudson*).

     To the extent that Burnett contends his incarceration amounts to a substantive
due process violation, this claim also fails.  The Fifth Circuit has explained that "to state
a viable substantive due process claim the plaintiff must demonstrate that the state
official acted with culpability beyond mere negligence."  *McClendon v. City of Columbia*,
305 F.3d at 326.

     Here, at worst, the evidence in this matter demonstrates negligence which is
insufficient to establish a substantive due process violation.  When asked why Burnett
remained incarcerated but his case was not turned over to the District Attorney — in
spite of the Burnett's admitting to transporting the crystal methamphetamine on the
night of his arrest — McDermit explained that the matter had simply fallen between the
cracks.  McDermit Depo., p. 14.  And, as stated above, Singley, who was originally
working the file, left employment with Marion County and believed the file was going to
be handled by McDermit and McDermit believed that Singley had taken the file with
him.  There is absolutely no evidence that there was any intentional deprivation in this
matter and, as such, Burnett's claim fails.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#19]** filed on behalf of defendants Sheriff Berkley Hall, Adrian Fortenberry, Brad McDermit, Jamie Singley and Steven Palmer is granted and this matter is dismissed with prejudice as to all defendants.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 14th day of September, 2011.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE